W. A. WHITE, Respondent, v. C. C. QUINLAN *et al.*,
Appellants.

Kansas City Court of Appeals, March 19, 1888.

1.  MORTGAGE OF PERSONAL PROPERTY—RULE AS TO MORTGAGEOR'S
    INTEREST AFTER FORFEITURE.—The general rule is, that the mort-
    gageor of personal property, after forfeiture, has no legal title to,
    or interest in, the property; the mortgagee has the absolute title
    to the property, subject only to the mortgageor's equitable right
    to redeem it.   This rule is the settled law of this state.

2.  —— WHAT MAY BE MORTGAGED—RIGHTS OF OWNER AND
    JUNIOR MORTGAGEES.—In general, any property which is capable
    of absolute sale may be mortgaged.  All claims growing out of
    and adhering to property; rights of action for damages *ex con-
    tractu*, and interest in actions pending and undetermined, may be
    the subject of mortgage.  The owner of a chattel has a mortgage-
    able interest in it, after default of a prior mortgage of the same,
    until foreclosure is completed.  The junior mortgagee has, until
    that time, the right to redeem.  The mortgageor has the power to
    convey his equity of redemption.  Such right is assignable.

3.  —— WHAT IS EQUIVALENT TO FORECLOSURE—CASE ADJUDGED.
    The property, in this case, was shipped by the mortgageor, with
    the consent of the second mortgagee, to the defendants, the first
    mortgagees, for sale.  The sale by the defendants was equivalent
    to a formal foreclosure of the equity of redemption.  The surplus
    remaining in the hands of the defendants, after satisfying their
    mortgage debt and costs of sale, they held in trust for the owner
    of the equity of redemption, and upon refusal to pay such surplus,
    on demand therefor, action is properly brought, as in this case, for
    money had and received.  The surplus belonged to the owner of
    the equity of redemption, and he could sue for it in *assumpsit;*
    and it was not necessary to resort to equity to recover such
    surplus.

4.  PRACTICE—ERROR IN GIVING INSTRUCTIONS, HOW WAIVED.—The
    action of the trial court in giving instructions is not open to review
    in this court, where, as in this case, the defendants failed to
    specify such action in the motion for a new trial, as a ground
    thereof.  Any error in such action must be deemed waived.

5.  —— PLEADING—DEFENCE NOT PLEADED—CASE ADJUDGED.—Even
    if payment was shown by the evidence in this case, this defence
    was not pleaded in the answer, and, therefore, cannot avail the
    defendants.  Besides, this defence was in no way called to the at-
    tention of the trial court by the instructions or otherwise.  It is too
    late to make it, in this court, for the first time.

APPEAL from Jackson Circuit Court, HON. JAMES H. SLOVER, Judge.

*Affirmed.*

*Motion for rehearing denied.*

The case and facts are stated in the opinion of the court.

PEAK, YEAGER & BALL, for the appellants.

I. It is insisted by the appellants that the petition does not state facts sufficient to constitute a cause of action against them. The petition shows no privity whatever between the defendants, Quinlan, Montgomery & Company, and the plaintiff. There is no allegation or averment that these defendants ever undertook or agreed to pay the plaintiff White any sum of money whatever. There is no allegation or averment that these defendants ever promised or agreed to pay the surplus proceeds arising from the sale of the cattle to defendant Wilcox, or to his assignees; nor that the plaintiff White, by virtue of his mortgage, became entitled to demand or receive said proceeds from these defendants. There is not a single allegation or averment that Quinlan, Montgomery & Company agreed to pay White anything, or that they owed him anything, or that they ought to pay him anything. *Bowling v. McFarland,* 38 Mo. 465.

II. The petition shows upon its face that plaintiff had no cause of action at law against Quinlan, Montgomery & Company. If the defendant Wilcox was indebted to plaintiff, and if defendants, Quinlan, Montgomery & Company, are indebted to Wilcox, then plaintiff, in a suit at law against Wilcox for the amount of his indebtedness to him, might have summoned Quinlan, Montgomery & Company to answer as garnishees. But he certainly would have had no original cause of

action against them at law. If the plaintiff had any cause of action whatever against Quinlan, Montgomery & Company, it was a proceeding in the nature of an equitable garnishment. In this proceeding, however, the plaintiff, in order to entitle him to proceed against them without first having obtained a judgment against Wilcox, must have alleged that Wilcox was insolvent or non-resident, or could not be served with process. *Pickens v. Davis*, 20 Mo. App. 1; *Lackland v. Garesché*, 56 Mo. 267; *Nelson v. Betts*, 21 Mo. App. 219; Pomeroy's Eq. Jur., sec. 327. The petition cannot stand as a suit at law, because the surplus in the hands of the mortgageor or trustee can only be recovered in equity. *Vick v. Smith*, 83 N. C. 80; *Kouns v. Shaffe*, 27 Md. 83.

III. The petition shows upon its face that the mortgage to Quinlan, Montgomery & Company became due January 20, 1885, and the mortgage to White was executed, March 12, 1885. After condition broken, the cattle became the absolute property of Quinlan, Montgomery & Company; they owned the legal title and had the right to dispose of the cattle according to their pleasure. Wilcox was a mere bailee, and had no interest in the cattle. Jones on Chat. Mort. [2 Ed.] sec. 454; *Wright v. Adams*, 76 Mo. 612; *Roach v. Type Foundry*, 21 Mo. App. 118. It must follow, then, that the mortgage from Wilcox to White conveyed no title whatever, as Wilcox himself had no title. These defendants objected to the introduction of this mortgage in evidence. The court overruled the objection and permitted plaintiff to read it. This was error. The interest of the mortgageor in chattels after condition broken, is not the subject of sale under execution. It is a mere equitable chose in action. *State to use v. Carroll*, 24 Mo. App. 361; *King v. Bailey*, 8 Mo. 332, 334; *Yeddell v. Stemmens*, 15 Mo. 443; *Boyse v. Smith*, 16 Mo. 317.

IV. The undisputed evidence shows that plaintiff White and the defendant Wilcox were partners. The

mortgage of March 12, 1885, was executed by Wilcox to secure his individual indebtedness to his partner, White. Such a mortgage is subject to the prior lien of creditors. *Priest v. Chouteaue*, 85 Mo. 398 ; Jones on Chat. Mort. [2 Ed.] sec. 45 ; Jones on Mortgages, 120.   In this view of the case,  Quinlan, Montgomery & Company would have had a right to appropriate the surplus in their hands to the payment of Wilcox's indebtedness to them, an indebtedness which grew out of the purchasing and feeding of the identical cattle in question.   We insist, therefore, that the trial court committed error in giving instructions numbered one and two for plaintiff, and in finding against these defendants.

V.   The judgment of the court is not responsive to the issues, and is, therefore, erroneous, and should be reversed.   The suit, whether it be a suit at law or a suit in equity, is against Quinlan, Montgomery & Company and J. H. Wilcox.   But there is no finding whatever by the court as to defendant Wilcox ; nor is there any judgment either for or against him.   Where there are several defendants, there must be some finding as to all of them.   *Schweickhart v. St. Louis*, 2 Mo. App. 571 ; *Eichelman v. Weiss*, 7 Mo. App. 87.

VI.   There is no equity in plaintiff's claim against these appellants.   Plaintiff's own evidence shows he has received from Quinlan, Montgomery & Company, of proceeds of sales of mortgaged cattle, more than double enough money to pay off his mortgage.   It appears remittances were made to him as follows :

| | | |
|---|---|---|
| " April 14, 1885 | $ | 535 00 |
| "      6,   " | | 536 64 |
| "     17,   " | | 537 22 |
| March 30,   " | | 728 69 |
| "     25,   " | | 5,543 61 |
| April 8,    " | | 2,502 24 |
| "     14,   " | | 464 25 |
| Total | | $10,487 65 " |

VII. In addition to this, the defendant Wilcox, who testified for plaintiff, says, that the deposit of March 16, 1885, in Isham's Bank to the credit of Wilcox & White of $2,025.26 was a remittance made by Quinlan, Montgomery & Company for hogs sold by them, and that the deposit of March 18, 1885, of $1,050, was also a remittance from Quinlan, Montgomery & Company, for stock sold by them. Add these two sums to the above amount and we have $13,922.91, as the amount remitted to them by Quinlan, Montgomery & Company. Add to this sum the amount which plaintiff says Quinlan, Montgomery & Company paid him April 22, 1885, to-wit, twenty-eight hundred dollars, and we have $16,722.91, as the amount which plaintiff and Wilcox received from the proceeds of the sale of the hogs and the cattle.

HENRY N. ESS, for the respondent.

I. The record does not show any refusal of the court to admit any evidence offered by defendants, except as follows: ' Witness, Peyton Montgomery, says: "He thinks Wilcox owed his firm twenty-one hundred dollars, or twenty-two hundred dollars when these last shipments were made. He said his brother told him this was the amount. His brother keeps the books, and his brother told him so." This evidence was objected to and excluded. It does not appear from defendants' abstract that any exception was taken. The mortgage from Wilcox to White was offered in evidence; it was objected to as incompetent, irrelevant, and immaterial. No more specific objections were made.

II. The third, fourth, fifth, and sixth assignments of error are, that the judgment is against the evidence, the weight of the evidence, is against the law and the evidence, and, under the law and evidence, judgment should have been for defendants; and the ninth is, that upon the record, judgment should have been for the defendants. Why, no one knows. The seventh and eighth assignments of error are to the refusal of instructions and the giving of instructions.

III. There were six grounds on which appellants asked for a new trial. The giving of instructions for plaintiff, and the refusal to give instructions asked by defendants, is not one of the grounds of the motion for a new trial. Before this court can reverse the judgment of the lower court for refusal to give instructions, or for giving instructions, the attention of the lower court must be called to the error in the motion for a new trial. This was not done. These two assignments of error ought not to be considered by this court. *McCord v. Railroad*, 14 Mo. App. 96. The ninth, tenth, eleventh, and twelfth assignments of error are virtually on the motion in arrest. They are, in effect, that the petition shows no case.

IV. The last point made by appellants is, that this debt from Wilcox to White was paid. Their answer, on which the case was tried, denied the allegations in the petition. It set up, also, that the mortgage to White from Wilcox was fraudulent as to creditors of Wilcox; that they were such creditors. This, plaintiff denied by reply. On these issues the case was tried, and decided against defendants. In this court, for the first time, outside of all issues, the claim is made that the debt to White from Wilcox was paid, or might have been paid, and, therefore, they are entitled to keep the money and pay it to neither. The question of payment of this debt to White from Wilcox is not in issue. A party cannot deny a debt ever was made, and that the mortgage is a fraud, and be defeated on those issues, and then, for the first time in the appellate court, say the debt was paid.

V. It is said in appellants' brief that an equity of redemption cannot be mortgaged. The appellants' mortgage debt became due in January, 1885. White took his mortgage in March, 1885. It is said that Wilcox then had nothing to mortgage, as the property was then the absolute property of the appellants. This court has held differently from this contention.

*Beckham v. Tootle*, 19 Mo. App. 601. Wilcox had a substantial interest capable of sale or mortgage. *Smith v. Coalbigh*, 21 Wis. 427; Jones on Chat. Mort., sec. 712.

VI.    The evidence to establish a custom as to paying interest failed.    The court must have found against such custom.    One witness is not enough.    Lawson on Usages and Customs, 96, 99, and cases cited.

VII.    It is said White has no contract with appellants to pay him this money.    Appellants never agreed to pay him; they were bound to pay Wilcox &· White. Wilcox & White shipped them cattle to sell.    They sold the cattle.    I suppose Wilcox & White were entitled to the proceeds of the sale.    White says he is entitled to this money.    Wilcox admits it.    He is a party to the suit.    White is the real party in interest.    He ought to be able to sustain the suit.    It may be that Wilcox should have joined him as plaintiff.    Defendants did not demur on this ground.    They did not take such objection by answer.    It is, therefore, waived.    *Rickey v. Ten Broeck*, 63 Mo. 570; *State to use v. Berriny*, 74 Mo. 99; *Rengger v. Lindenberger*, 53 Mo. 365-6; *State ex rel. v. True*, 20 Mo. App. 179.    Quinlan, Montgomery & Company got their mortgage debt.    There was a surplus left of $5,011.31.    They paid White twenty-eight hundred dollars.    They claimed to apply the balance on a debt due them from Wilcox.    There was no such debt. There was no debt.    They have no claim on this money. Wilcox is a party to this suit.    He swears he has no claim on this money.    It is a part of the proceeds of the sale of cattle sent defendants by White and Wilcox. They failed to make the defence of a want of sufficient parties plaintiff.    They are not entitled to this money. Their only claim to it has failed.    Why reverse this case on mere technicalities?    White is entitled to this money under the mortgage to him—under his agreement with Wilcox.    There is no possible excuse for this appeal. We ask ten per cent. damages for appealing the case without excuse.

PEAK, YEAGER & BALL, on motion for rehearing.

I.   The declaration given by the trial court, over the objection of the defendants, was not the law of the case, and the judgment rendered by the trial court was based upon a false theory of law.   This court holds that this declaration of law could not be reviewed on appeal, because it was not mentioned in defendants' motion for a new trial.   We respectfully submit that this ruling of the court is not in harmony with adjudicated cases upon this subject.   It has been held that declarations of law are of but little use when the cause is submitted to the court for hearing, except to show the theory on which the case is tried.   *Cooper v. Ord*, 60 Mo. 431 ; *Stone v. Spenser*, 77 Mo. 351 ; *Williamson v. Drew*, 9 Mo. App. 598 ; *Kimberlin v. Short*, 24 Mo. App. 643.

II.   In the last case referred to, at page 647, the court used this language :   " The chief object of having declarations of law where the case is tried by the court sitting as a jury, is to ascertain upon what theory of the law the court reached its conclusion.   We are enabled to ascertain these facts in this case, because the court delivered a written opinion, which is preserved in the bill of exceptions.   The court found that the reply admits the contract and the discharge."   Here the appellate court found, from the written opinion filed by the trial judge, that the trial court had committed error in the theory upon which the case was tried, and the cause was reversed for this error.   In the case above referred to, the written opinion delivered by the judge was not mentioned in the motion for a new trial, and yet, because this written opinion revealed the fact that the trial court had proceeded upon a false theory of the law, the cause was reversed.   We submit that, under the opinion rendered by the appellate court in the case at bar, the declaration of law given by the trial court was error ; that it reveals the fact that the trial court tried the cause upon a false theory of the law, and, therefore, the motion for rehearing should be granted.

HENRY N. Ess, opposing motion for rehearing.

I. The opinion in this case is not in conflict with the previous opinion of the Supreme Court or of the appellate courts of this state.

II. The declarations of law given were wholly immaterial.

III. This court did not overlook the opinion in *Kimberlin v. Short*, 24 Mo. App. 643. That case is clearly distinguishable from this.

HALL, J.—The petition avers that the defendant Wilcox, on the twenty-third day of October, 1884, executed and delivered to the defendants, Quinlan, Montgomery & Company, his promissory note, due January 20, 1885, for $16,750.00, with twelve per cent. interest; and at the same time, to secure the payment of said note, defendant Wilcox executed his chattel mortgage on four hundred head of cattle in Montgomery county, Kansas; that, on March 12, 1885, defendant Wilcox executed and delivered to plaintiff his promissory note for eight thousand dollars, due June 1, 1885, and that this note was given for five thousand dollars advanced by plaintiff to defendant Wilcox, and that, to secure the payment of said note, defendant Wilcox executed and delivered to plaintiff his chattel mortgage upon the same property mortgaged to Quinlan, Montgomery & Company and other property; that, on April 1, 1885, all the property embraced in both mortgages was shipped to Quinlan, Montgomery & Company for sale; that Quinlan, Montgomery & Company sold the cattle, and after liquidating the indebtedness of Wilcox to them, and accounting to plaintiff for twenty-eight hundred dollars of the proceeds, had a surplus in their hands of $2,211.31, for which plaintiff asks judgment against Quinlan, Montgomery & Company. No judgment is asked against defendant Wilcox.

Defendants, Quinlan, Montgomery, and Burnside, filed an amended answer, October 26, 1885, which is in

two counts. The first count is a general denial "except as hereafter admitted." The second count admits the partnership ; admits that Wilcox made the note and mortgage to them. They deny that Wilcox is indebted to the plaintiff White, in the *manner charged* in the petition ; they deny that the plaintiff ever had any valid claim on the cattle themselves, or the money which was in the hands of Quinlan, Montgomery, and Burnside ; they deny that White ever loaned any money to Wilcox on the note and mortgage ; they deny that White had or ever had any legal or equitable claim on the cattle, or on the proceeds of their sale. They alleged that Wilcox was indebted to them in a large sum of money over and above the mortgage ; that the cattle were shipped to them to sell, and that they applied this money to pay the Wilcox debt to them. They claim that the mortgage was fraudulent and void as to them, creditors of said Wilcox.

The plaintiff replied with a general denial. The trial resulted in a judgment as prayed against Quinlan, Montgomery & Company. There was no judgment against, and no finding as to, the defendant Wilcox.

The general rule is, that the mortgageor of personal property after forfeiture has no legal title to, or interest in, the property ; the mortgagee has the absolute title to the property subject only to the mortgageor's equitable right to redeem it. This rule is the settled law of this state.

The mortgageor after the forfeiture has no legal title, and of course, can neither sell nor mortgage any interest in the property depending upon such title. The question is, can the mortgageor convey by mortgage his equity of redemption? The question would seem to be answered in the negative in *Hulson v. Walter*, 34 How. Pr. 388. But in *Smith v. Coolbaugh*, 21 Wis. 437, an affirmative answer is given to the question. The court says : "It is claimed that he [the mortgageor] had no mortgageable interest, because the title to the prop- erty, on default, had become absolute at law in the first

mortgagee. But still, as just observed, he was in possession, and had the right to redeem until this right was foreclosed by a sale, or perhaps by the lapse of time. We have no doubt but that he had such an interest as was the subject of sale or mortgage."

The general rule as to what is the subject of mortgage is thus stated by Mr. Jones in his work on Chattel Mortgages: "In general, any property which is capable of absolute sale may be mortgaged. All claims growing out of and adhering to property, rights of action for damages *ex contractu*, and interest in actions pending and undetermined, may be the subject of mortgage." Sec. 114. As to the precise question under discussion the same author says: "The owner of a chattel has a mortgageable interest in it after default of a prior mortgage of the same, until foreclosure is completed. The junior mortgagee has, until that time, a right to redeem." Sec. 115.

Mr. Hermann states the general rule as follows : " At common law nothing can be mortgaged that does not belong to the mortgageor, at the time when the mortgage is made, but everything which is the subject of contract, or which may be assigned, is capable of being mortgaged." Hermann on Chattel Mort., sec. 36. Among the things subject to mortgage under the rule stated by him the author recognizes " the residuary interest of a debtor in goods assigned in good faith by him in trust for the payment of debts, or other specific purposes." *Id.*, sec. 8.

There is, of course, no question as to the power of the mortgageor to convey his equity of redemption ; such right is assignable. The sale of the property by the mortgageor conveys the right to redeem, which is the only interest he has in the property. The sale conveys no more than the mortgageor's interest, but it does convey his whole interest. Jones on Chat. Mort., sec. 454.

I have no doubt that an equity of redemption in

mortgaged chattels can be mortgaged, and that a mortgage of such chattels is effectual as a mortgage of such equity of redemption. This question was not determined in *Beckham v. Tootle, Hanna & Company*, 19 Mo. App. 601. The appellant in that case contended for the contrary rule ; for the purposes of that case his contention was yielded to, and the case still decided against him. The property was shipped by the mortgageor, with the consent of the second mortgagee, to the defendants, the first mortgagees, for sale. The sale by the defendants was equivalent to a formal foreclosure of the equity of redemption. Jones on Chat. Mort., sec. 775. The surplus remaining in the hands of the defendants, after satisfying their mortgage debt and costs of sale, they held in trust for the owner of the equity of redemption. The plaintiff, as we have seen, was such owner. The defendants refused to pay such surplus to the plaintiff on his demand therefor. The plaintiff, under such circumstances, properly brought an action for money had and received against the defendants. 2 Jones on Chat. Mort., sec. 817 ; Jones on Mort., sec. 1940, and cases cited. The equity of redemption had been foreclosed by the sale consented to by the plaintiff. No suit to redeem could, therefore, be maintained. The surplus belonged to plaintiff, and for it he could sue in *assumpsit*. It was not necessary to resort to equity to recover such surplus. This is made clearer by consideration of the rule allowing the mortgageor to recover from the mortgagee as for a conversion, where the mortgagee, after selling a portion of the mortgaged property for a sum sufficient to pay the debt and costs, sells the remainder of such property. *Charter v. Stevens*, 3 Denio, 34. The property remaining after the satisfaction of the debt and costs belongs to the mortgageor, and for a conversion of it he may maintain an action in trover. *Id.* And so, too, a creditor of the mortgageor may by attachment reach the surplus

proceeds in the hands of the mortgagee. *Fisher v. Tallman*, 74 Mo. 40.

For these reasons we think that the petition was good, in form and in substance.

The action of the court in giving instructions is not open to review by us, because the defendants failed to specify such action in the motion for a new trial as a ground thereof. Any error in such action must be deemed waived. *Ray v. Thompson*, 26 Mo. App. 437 ; *Kimberlin v. Short*, 24 Mo. App. 647. The rule of practice is generally as stated by the defendants' counsel, and requires a finding as to all the defendants where they are two or more in number. But this rule was not violated in this case, for here, although Wilcox was made a party, the pleadings raised no issue as to him. The petition neither stated a cause of action, nor prayed for judgment, against him. He filed no answer, and on the stand as a witness for plaintiff he testified that he had no interest in the money in suit. As the pleadings raised no issue as to Wilcox, as they showed no interest in the subject of the suit had by him, and as he, under oath, disclaimed any such interest, on what could a finding as to him have been made? No finding as to him was necessary. *Cole v. Barron*, 8 Mo. App. 513.

The defendants' counsel finally make the point that the debt secured by the plaintiffs' mortgage was paid, and that such payment was conclusively shown by the evidence. This defence was not pleaded in the answer, and, therefore, cannot avail the defendants. *Wilkerson v. Farnham*, 82 Mo. 678. This defence was in no way called to the attention of the trial court by the instructions or otherwise. It is too late to make it here for the first time.

Judgment affirmed. All concur.